Not Reported in F.Supp.2d, 2008 WL 161797 (D.Idaho)

Motions, Pleadings and Filings
Judges and Attorneys
Only the Westlaw citation is currently available.

United States District Court,
D. Idaho.
SEMMATERIALS, L.P. an Oklahoma limited partnership, Plaintiff
v.
ALLIANCE ASPHALT, INC., an Idaho corporation, Defendant.

No. CV 05-320-S-LMB.
Jan. 15, 2008.

John F. Heil, III, Hall Estill Hardwick Gable Golden & Nelson, Tulsa, OK, Kelly Alfred Cameron, Perkins Coie LLP, Boise, ID, for Plaintiff.

Matthew L. Walters, William G. Dryden, Elam & Burke, Boise, ID, for Defendant.

### FINDINGS OF FACT, CONCLUSIONS OF LAW, AND ORDER

LARRY M. BOYLE, U.S. Magistrate Judge.

*1 Currently pending before the Court is Plaintiff SemMaterials, L.P .'s Motion for an Order to Show Cause Why A Writ of Execution Should Not Be Issued Against The Personal Assets of Cory Rose, Kristina Rose and Susan Buckley Watson ("Motion") (Docket No. 67). On November 20, 2007, the Court granted in part SemMaterials' Motion, requiring that Cory Rose and Susan Buckley Watson appear before the Court to show cause why, if any, a writ of execution should not be issued against their personal assets in an effort to satisfy the Amended Judgment (Docket No. 57) entered in favor of SemMaterials and against Defendant Alliance Asphalt, Inc. ("Alliance") on March 1, 2007. (Docket No. 71). SemMaterials' Motion was denied in part without prejudice to the extent it sought relief against Kristina Rose, who filed Chapter 7 bankruptcy, which triggered an automatic stay of the instant proceedings against her pursuant to the United States Bankruptcy Code. *(Id.).*

At the January 10, 2008 show cause hearing for Cory Rose and Susan Buckley Watson, Cory Rose did not appear. He also did not submit any written opposition to SemMaterials' Motion. Having reviewed SemMaterials' Motion and supporting papers, and in light of Cory Rose's failure to file a timely opposition to the Motion and his failure to appear for the January 10, 2008 show cause hearing, the Court now makes its Findings of Fact and Conclusions of Law as set forth below, and issues the following Order.

### I.
### FINDINGS OF FACT

Having carefully considered the evidence submitted in support of SemMaterials' Motion, attached to counsel's supporting affidavit (Docket No. 67-3), and SemMaterials'

arguments made in its supporting memorandum (Docket No. 67-2), the Court makes and enters the following Findings of Fact. To the extent that any conclusions of law contained herein can be considered to be or are deemed to be findings of fact, they are incorporated by reference into these Findings of Fact.

1. On March 1, 2007, SemMaterials obtained an Amended Judgment (Docket No. 57) against Defendant Alliance in the amount of $318,270.18, plus post-judgment interest.

2. At all times pertinent to SemMaterials' Complaint against Alliance (Docket No. 1), Cory Rose was one of three principals of Alliance and he served as Alliance's CEO during this time. (Transcript of Judgment Debtor Examination ("DE"), pp. 15, 17, 30, attached as Ex. A to the Affidavit of Christine M. Salmi ("Salmi Aff.") (Docket No. 67-3); *see also* Ex. B to Salmi Aff.). A CEO of Alliance, and one of its three principals, Mr. Rose had primary control over Alliance's operations.

3. At all times pertinent to SemMaterials' Complaint, Alliance was registered as an Idaho corporation and was engaged in the business of providing transportation services, or trucking services, to various vendors, including hauling SemMaterials' liquid asphalt products. (Docket No. 50, Findings of Fact Nos. 1-5).

4. Alliance was formerly named "Rockin R. Ranch, Inc." In 2004, Rockin R. Ranch, Inc. had three principals, who are the same three individuals who later served as principals of Alliance. These individuals held the same titles as principals of Rockin R. Ranch as they eventually did as principals of Alliance when the corporate name was later changed to Alliance Asphalt, Inc. (Ex. C to Salmi Aff.).

*2 5. The corporation's name was officially changed to Alliance Asphalt, Inc. in May 2004. (Ex. D to Salmi Aff.). Although the paperwork filed with the Idaho Secretary of State's Office represented that 500 shares were issued with voter rights *(id.)*, no Alliance stock or shares were ever actually issued. (4/10/07 Debtor's Examination (hereafter "DE"), p. 16).

6. No written documentation was created to address who owned what percentage of the corporation. Rather, according to Mr. Rose, the agreement between Alliance's three principals "was just a very loose [oral] agreement," where it was understood that ownership of the company would be divided 40/40/20, with Mr. Rose to have a 40% interest, Mr. Rose's wife to have a 40% interest and Susan Buckley Watson to have a 20% interest. (DE, pp. 16-17, 24).

7. Other than filing a one-page Articles of Incorporation, no other corporate formalities were observed by Alliance. No regular shareholder or director meetings were held that were evidenced by any written minutes. (DE, pp. 16-17, 39). No shares or stock were ever formally issued, despite what was represented to the Idaho Secretary of State's office (DE, pp. 16, 38-39, 78), and no written by-laws were ever adopted. (DE, pp. 17, 77, 83).

8. When asked about the formal name change from Rockin R. Ranch to Alliance, Mr. Rose stated: " *I* went through a corporate name change and *I* totally became Alliance Asphalt." (DE, p. 30) (emphasis added); *see also* DE, p. 36) (where Mr. Rose, when

referring to some hardship experienced by Alliance, stated: "It was in the contract so, yeah, they froze a half a million dollars of *my* money. *I* had no way to get any money. *I* couldn't do any work. I tried.") (emphasis added). These statements reveal that Mr. Rose considered Alliance as a mere personal extension of himself. This way of thinking is further reflected in the manner in which Mr. Rose handled Alliance's finances.

9. Mr. Rose transferred money from his "personal account"-which used to be the corporate account for Rockin R. Ranch and continued to be titled in the name of Rockin R. Ranch-to Alliance's corporate bank account on a regular basis without any documentary evidence demonstrating that the money was a "loan" to Alliance approved by Alliance's Board of Directors. (DE, pp. 52-53, 86; *see also* Ex. E to Salmi Aff.).

10. In addition, although Mr. Rose was Alliance's CEO, he could not identify any specific sum of money that had been set aside as operating funds for the corporation, although he admitted Susan Buckley Watson was the primary financier of the corporation. (DE, p. 42). Alliance's tax records reveal that, over a year after its incorporation, Alliance's operations produced over $3.5 million dollars in gross revenues for 2005. (Ex. G to Salmi Aff.).

11. With respect to money flowing out of the company, there was no evidence of a formal vote or written agreement regarding what salary, if any, should be paid to Mr. Rose as an Alliance officer. Instead, Mr. Rose admitted that he took "draws" or "dividends" whenever he needed money to "survive." (DE, pp. 30-31, 40); *see also* Ex. F1 to Salmi Aff.). No documentary evidence was produced that demonstrated that these regular "draws" or "dividends" Mr. Rose took from the corporate account had been approved by Alliance's Board of Directors, or that any of these funds were intended to repay loans Mr. Rose may have made to the corporation. Accordingly, it appears Mr. Rose commingled corporate funds with his personal funds on a number of occasions. Indeed, Mrs. Rose acknowledged that Mr. Rose occasionally paid for fuel for Alliance's trucks from his personal bank account. (DE, p. 87).

*\*3* 12. The accounting records maintained by Alliance's bookkeepers also reflect that corporate funds were commonly used to pay for Mr. Rose's personal expenses. (Ex. F2 to Salmi Aff.).

13. Although Alliance filed Articles of Dissolution on November 16, 2006, the Articles state that the dissolution was effective on September 1, 2006. (Ex. H to Salmi Aff.; *see also* DE, p. 67).

14. At or around the time Alliance was attempting to dissolve, Mr. Rose filed Articles of Incorporation for a new Idaho corporation entitled, "IdaTrans, Inc." on October 18, 2006. (Ex. I to Salmi Aff.).

15. Mr. Rose is the sole shareholder of IdaTrans, Inc.

16. IdaTrans, Inc.-similar to Alliance-is a trucking company in the business of hauling goods across the country. Specifically, IdaTrans, Inc. is a refrigerated trucking company that transports frozen foods. (DE, pp. 9, 13). A year or so prior to Alliance's attempts to dissolve, Alliance's principals had made the decision to switch from transporting asphalt

products to transporting frozen food products. Thus, the new corporation, IdaTrans, Inc., conducts the same type of business that Alliance conducted prior to its attempts to dissolve in the Fall of 2006. (Ex. J to Salmi Aff.; DE, pp. 28-29).

   17. As of the date of this filing, SemMaterials' Amended Judgment in the amount of $318,270.18 has not been satisfied in whole, or in part. (¶ 13 to Salmi Aff.).

   18. According to Mr. Rose, Alliance has no assets to satisfy SemMaterials' Amended Judgment. (DE, pp. 17-18).

## II.
## CONCLUSIONS OF LAW

   To the extent any of the above findings of fact are deemed to be conclusions of law, they are incorporated by reference into these conclusions of law. The Court makes the following conclusions of law:

   1. Cory Rose was provided with appropriate notice of this Court's order setting the January 10, 2008 show cause hearing in response to SemMaterials' Motion. (Docket No. 74). His failure to file a timely opposition to SemMaterials' Motion and to appear at the January 10, 2008 show cause hearing constitutes a consent to the relief sought in SemMaterials' Motion. *See* D. *Id.* L. Cir. R. 7.1(e).

   2. This Court retains jurisdiction to enforce its judgments pursuant to Fed.R.Civ.P. 69(a).

   3. SemMaterials' Motion is effectively a **motion** to **pierce** Alliance's **corporate veil**. The United States Supreme Court has recognized that an action to pierce the corporate veil is "not itself an independent … cause of action, 'but rather is a means of imposing liability on an underlying cause of action.'" *Peacock v. Thomas,* 516 U.S. 349, 354 (1996) (quotation omitted). "An action to pierce the corporate veil in order to enforce a court's previous judgment is within the purview of Rule 69, Fed.R.Civ.P., and may be commenced as a petition for a writ of execution." *Cordius Trust v. Kummerfeld,* 2004 WL 616125, at *3-8 (S.D.N.Y.2004), rev'd on other grounds, 153 Fed. Appx. 761 (2d Cir.2005) (recognizing that Rule 69 is the proper procedural rule upon which to move in supplementary proceedings to pierce the corporate veil of the judgment debtor to hold an officer **not** a **party** to the original action individually liable). *See also AIOI Seiki, Inc. v. JIT Automation, Inc.,* 11 F.Supp.2d 950, 951-54 (E.D.Mich .1998) (dismissing subsequent proceedings seeking to pierce the corporate veil to hold officer liable for corporate judgment obtained in earlier proceedings because action should have been brought in earlier proceedings pursuant to Rule 69 as opposed to a separate lawsuit); *Flip Side Productions, Inc. v. Jam Productions, Ltd.,* 125 F.R.D. 144, 146 (N.D.Ill.1989) (holding that Rule 69, not Rule 60 motion for relief from judgment, is the proper procedural device for piercing the judgment debtor's corporate veil).

   ***4** 4. This Court's jurisdiction over the instant supplemental proceedings is not ancillary. Rather, it has original subject matter jurisdiction over these proceedings based on the diversity of citizenship of the parties and given that the amount in controversy (*i.e.,* the judgment sought to be enforced) exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332. *See Peacock,* 516 U.S. at 355-60 (action to pierce the

corporate veil requires independent jurisdictional basis).

   5. Because Mr. Rose had sufficient opportunity to respond to SemMaterials' Motion, no due process concerns are implicated here by granting SemMaterials' requested relief against Mr. Rose. See Cordius Trust, 2004 WL 616125, at *4 (distinguishing Nelson v. Adams, 529 U.S. 460 (2000), where Supreme Court held due process rights had been violated when new party added to the judgment had not been given any opportunity to respond or oppose imposition of personal liability); Mccarthy v. State Five Indus. Park, Inc., No. CV054015888, 2006 WL 829684, *2 (Conn.Super.Ct., Mar. 15, 2006) (citations and internal quotation marks omitted) (explaining that "[a]ctions to pierce the corporate veil to enforce a judgment, however, do not violate due process because once alter ego status is established, the previous judgment is then being enforced against entities who were, in essence, parties to the underlying dispute; the alter egos are treated as one entity")).

   6. In Idaho, the rule for disregarding the corporate entity is clear:

It is the general rule that the conditions under which a corporate entity may be disregarded vary according to the circumstances of each case. However, two requirements for application of the doctrine are (1) that there be such a unity of interest and ownership that the separate personalities of the corporation and the individual no longer exist and (2), that if the acts are treated as those of the corporation, an inequitable result will follow.… [In other words,] "[t]o warrant casting aside the legal fiction of [a] distinct corporate existence … it must also be shown that there is such a unity of interest and ownership that the individuality of such corporation and such person had ceased; and it must further appear from the facts that the observance of the fiction of separate existence would, under the circumstances, sanction a fraud or promote injustice."

Chick v. Tomlinson, 96 Idaho 483, 485-86, 531 P.2d 573, 575-76 (1975) (internal quotation and citations omitted).

   7. Some of the relevant factors Idaho courts have relied upon to pierce the corporate veil include: (1) corporate formalities-such as holding regular directors' or shareholders' meetings, maintaining written minutes for these meetings and/or adopting corporate by-laws-were not observed; (2) shareholders failed to submit corporate contracts or loans for approval by the board of directors; (3) control of the corporation was centralized among one or a few shareholders; (4) corporate funds were transferred, corporate accounts were accrued and paid and/or corporate claims were satisfied without approval by the board of directors; (5) corporate funds were commingled with a majority shareholder's or officer's personal funds; (6) the corporation was not represented to third parties as an entity separate from its shareholders; and/or (7) the corporation's initial capitalization was inadequate to meet the corporation's "reasonably foreseeable potential liabilities." Alpine Packing Co. v. H.H. Keim Co., 121 Idaho 762, 764-65, 828 P.2d 325, 327-28 (Ct.App.1991); Hutchison v. Anderson, 130 Idaho 936, 940, 950 P.2d 1275, 1279 (Ct.App.1997); Nakamura, Inc. v. G & G Produce Co., 93 Idaho 183, 184-85, 457 P.2d 422, 423-24 (1969). "These factors[, however,] are not exclusive because the conditions under which a corporate entity may be disregarded vary according to the circumstances of the case." Hutchinson, 130 Idaho at 940, 950

P.2d at 1279. Any combination of the above factors, or other related factors, can satisfy the "unity of interest and ownership" requirement. To pierce the corporate veil, however, the Court must also conclude that, under the circumstances presented, "an inequitable result would follow if only the corporation [were] held liable." *Id.* at 940-41, 950 P.2d at 1279-80.

**5* 8. The undisputed evidence reveals that there was such a unity of interest and ownership between Mr. Rose and Alliance that Alliance never existed as a separate entity apart from Mr. Rose. In this respect, the undisputed evidence reveals that corporate formalities were never observed-no shares were issued, no by-laws were adopted, and no written minutes were taken to evidence any regular shareholder or director meetings. (DE, pp. 16-17, 38-39, 77-78, 83-84; ¶ 6 to Salmi Aff.). In addition, no written evidence was produced, nor could Mr. Rose recall what specific capital, if any, was set aside to allow Alliance to operate independently as a separate entity. (DE, p. 42). Alliance's tax records reflect that it brought in over $3.5 million dollars in gross revenues a year after it was incorporated. (Ex. G to Salmi Aff.). A trucking company hauling goods across the country, operating at this capacity would have significant "reasonably foreseeable potential liabilities," *Alpine Packing Co.*, 121 Idaho at 765, 828 P.2d at 328; yet, just over two years after being in business, Alliance is unable to pay its creditors. (DE, pp. 17-18).

9. The undisputed documentary evidence, and the sworn testimony of Mr. Rose and his wife, also reveals that Mr. Rose's personal funds were commonly commingled with corporate funds. (DE, pp. 30-31, 40, 52-53, 86-87, 89; Exs. E, F1 and F2 to Salmi Aff.). There is no evidence that any of the funds paid into the corporate bank account by Mr. Rose were intended to serve as a loan to the corporation. Nor is there any evidence that the regular withdrawals of corporate funds Mr. Rose made from Alliance's business account were approved by Alliance's Board of Directors, or that these corporate funds were intended to repay loans Mr. Rose had made to the corporation, which had been approved by the Board of Directors. Instead, it was Mr. Rose who understood in his mind that Alliance's operations were in fact his own, where, in his own words, he described the down fall of Alliance's business as his own personal inability to continue to make money. (DE, pp. 30, 36). In essence, the undisputed evidence reveals that Alliance was controlled by Mr. Rose and that, in reality, Mr. Rose used Alliance as a front for his own personal business affairs.

10. Not only is the unity of interest and ownership requirement met, but an inequitable result will arise if Alliance's corporate entity is not disregarded as against Mr. Rose. SemMaterials will not be able to enforce its money judgment if this Court concludes that Mr. Rose is not personally liable for Alliance's misconduct towards SemMaterials. Despite efforts by SemMaterials to enforce its Amended Judgment against Alliance, those attempts have been unsuccessful. No portion of SemMaterials' March 1, 2007 Amended Judgment has been satisfied as of the date of this filing. (¶ 13 to Salmi Aff.). According to Mr. Rose, Alliance has no funds, or intentions, to satisfy the Amended Judgment. (DE, pp. 17-18). To allow Mr. Rose to benefit from receiving over $110,000 in support payments from SemMaterials, when Alliance admittedly failed and refused to provide the services it promised to provide SemMaterials in return for those payments, would result in an injustice. *Cf. Chick,* 96 Idaho at 486, 531 P.2d at 576 (affirming trial court's decision to pierce the corporate veil where adhering to the corporate form of the

judgment debtor would have resulted in an injustice given that the corporation had no money to satisfy its obligations); *Nakamura, Inc.*, 93 Idaho at 185, 457 P.2d at 424 (concluding that corporate veil must be pierced where there was "such a unity of ownership and interest between the individuals and the corporation as to make them indistinguishable," such that the individuals should be held personally liable for the debts contracted in the name of the corporation in order to prevent an injustice).

*\*6* 11. In addition, the undisputed facts summarized above demonstrate that observing the fiction that Alliance had a separate existence from Mr. Rose would sanction the actions of Mr. Rose. Mr. Rose not only controlled and operated Alliance as his alter ego, but he also attempted to dissolve the corporation and "rename" the corporation as a new company engaging in the same type of business as before (now with a new name).

12. The undisputed facts identified above constitute ample evidence demonstrating that Mr. Rose should be considered the alter ego of Alliance and Alliance's corporate veil should be pierced to allow SemMaterials to enforce its March 1, 2007 Amended Judgment against Mr. Rose's personal assets.

### III.
### ORDER

Now, therefore, IT IS HEREBY ORDERED:

1. SemMaterials' Motion for an Order to Show Cause Why A Writ of Execution Should Not Be Issued Against The Personal Assets of Cory Rose, Kristina Rose and Susan Buckley Watson (Docket No. 67) and is GRANTED IN PART with respect to the relief requested against Cory Rose.

2. Plaintiff's Application for a Writ of Execution (Docket No. 68) is GRANTED IN PART with respect to the relief requested against Cory Rose.

3. Plaintiff's counsel shall submit a proposed writ of execution in WordPerfect format to the Clerk of the Court at LMB-Orders@id.uscourts.gov.

4. The Clerk of the Court shall issue a writ of execution against Cory Rose, personally and individually, for the purposes of executing on the March 1, 2007 Amended Judgment (Docket No. 57) SemMaterials, L.P. obtained against Alliance Asphalt, Inc. in the sum of $318,270.18. The writ of execution shall direct that the March 1, 2007 Amended Judgment should be satisfied, with interest, out of the personal property of Cory Rose, and if sufficient personal property cannot be found, then out of Cory Rose's real property; and where the March 1, 2007 Amended Judgment is a lien upon real property, the Judgment should be satisfied out of the real property belonging to Cory Rose on the day when the March 1, 2007 Amended Judgment was docketed, or at any time thereafter, pursuant to Fed.R.Civ.P. 69(a) and Idaho Code §§ 11-102 and-104.

D.Idaho,2008.
Semmaterials, L.P. v. Alliance Asphalt, Inc.
Not Reported in F.Supp.2d, 2008 WL 161797 (D.Idaho)

Motions, Pleadings and Filings (Back to top)

- 2005 WL 2868184 (Trial Pleading) Answer to Counterclaim (Sep. 20, 2005)  Original Image of this Document (PDF)
- 1:05cv00320 (Docket) (Aug. 10, 2005)

Judges and Attorneys (Back to top)

Judges | Attorneys

Judges

- **Boyle, Hon. Larry Monroe**
United States District Court, Idaho
Boise, Idaho 83724
Litigation History Report | Judicial Motion Report | Judicial Reversal Report | Judicial Expert Challenge Report | Profiler

Attorneys

Attorneys for Defendant
- **Dryden, William G.**
Boise, Idaho 83701
Litigation History Report | Profiler

- **Walters, Matthew L.**
Boise, Idaho 83701
Litigation History Report | Profiler

Attorneys for Plaintiff
- **Cameron, Kelly A.**
Boise, Idaho 83702
Litigation History Report | Profiler

- **Heil, John F. III**
Tulsa, Oklahoma 74103
Litigation History Report | Profiler

END OF DOCUMENT

(c) 2012 Thomson Reuters. No Claim to Orig. US Gov. Works